## Cavalcante v. O'Hara, Secretary of the Commonwealth

*Guy K. Bard*, for plaintiff.

*Claude T. Reno*, Attorney General, and *Fred C. Morgan*, Deputy Attorney General, for defendant.

PER CURIAM, July 27, 1939.—This matter comes before us upon an application for a writ of mandamus to the Secretary of the Commonwealth, to which a return was made.

The facts are not in dispute. Petitioner, a member of the Democratic Party, and an elector of Fayette County constituting the fourteenth judicial district, avers that because of the death of Hon. Harry A. Cottom on July 6, 1939, a vacancy in the office of judge in that county occurred, which, under the Constitution, should be filled at the municipal election to be held Tuesday, November 7, 1939; that he duly presented his nomination petition as a candidate of the Democratic Party for said office to the Secretary of the Commonwealth on

July 20, 1939, which petition was regular in form and complied with the election laws; that the Secretary of the Commonwealth refused to receive said petition on the ground that the office of judge was not designated in the written notice sent by the Secretary of the Commonwealth to the County Board of Elections in Fayette County, pursuant to section 905 of the Pennsylvania Election Code of June 3, 1937, P. L. 1333, as an office for which candidates are to be nominated at the primary election to be held on September 12, 1939, but the office of judge in said county was not vacant on the tenth Tuesday preceding the primary election to be held on said date and was not designated by the county board as vacant in a notice sent to the Secretary of the Commonwealth on or before that date, the tenth Tuesday preceding said primary election; that the Secretary of the Commonwealth had knowledge of the vacancy as is evidenced by the fact that on July 7, 1939, she attached her signature to a commission designating the Hon. H. S. Dumbauld as president judge to fill the vacancy caused by the death of Hon. Harry A. Cottom; that on July 18, 1939, the County Commissioners of Fayette County, constituting the Fayette County Board of Elections, duly published in the newspapers in said judicial district a notice setting forth the names of all public offices for which nominations are to be made at the primary election to be held September 12, 1939, among which is included the office of judge of the court of common pleas left vacant by the death of Judge Cottom.

The return of the Secretary of the Commonwealth, referring to the Pennsylvania Election Code, supra, section 801 (*b*) of article VIII, sections 902 and 905 of article IX, admitting the facts averred, answers that the Secretary could not lawfully accept said nominating petition.

Petitioner contends that the Secretary is without statutory authority to refuse to receive and file the petition because under article IX, sec. 976, of the Pennsylvania Election Code, the situations in which the Secretary may

refuse to receive petitions are specifically set out; that the only one which would give her the right is because the nomination petition "(a) . . . contains material errors or defects apparent on the face thereof, or on the face of the appended or accompanying affidavits". It is contended that it would be enlarging this language too much to hold that it authorizes the refusal of the papers in the instant case.

We prefer to put our decision upon the broader question of the constitutional interpretation rather than upon this technical proposition, and therefore do not decide it.

We are confronted with the proposition as to whether or not the Constitution of Pennsylvania requires the election to fill this vacancy at the municipal election to be held November 7, 1939. If the provisions of the Pennsylvania Election Code with reference to the machinery for obtaining party nominations are to be construed as mandatory, then this petitioner cannot prevail. If, however, the provision of the Pennsylvania Election Code found in section 905 of article IX is directory only as to the time when the Secretary of the Commonwealth must send to the county board the notice designating the offices to be filled, and such notice may be augmented by a corrected or subsequent notice, then petitioner may prevail.

Section 905 of article IX of the Pennsylvania Election Code provides, inter alia:

"On or before the tenth Tuesday preceding each primary, the Secretary of the Commonwealth shall send to the county board of each county a written notice designating all the offices for which candidates are to be nominated therein," etc.

This year the tenth Tuesday was July 4th, which was a holiday. The notices were sent July 5th and Judge Cottom died July 6th. Notwithstanding the failure of the Secretary to include the office of judge as one to be filled, the county commissioners did include it in their required advertisement.

The Secretary of the Commonwealth relies upon the case of Commonwealth ex rel. v. Blankenburg, 218 Pa. 339. That case holds that the provisions of the Uniform Primaries Act of February 17, 1906, P. L. 36, were mandatory insofar as they fixed the definite date of the ninth Saturday preceding the primary election as the last date upon which nominating petitions could be presented for the nomination of a judge in the County of Philadelphia. This case on its facts is directly applicable to the present situation, but it is remarkable that the able counsel for petitioner in that case (as shown by an examination of the paper books), Judge von Moschzisker and Judge Ferguson in the court below (Commonwealth ex rel. v. County Commrs., 16 Dist. R. 341), and the Supreme Court made no reference to, and gave no consideration to, the constitutional provision upon the subject.

Petitioner contends that there is a distinction between the provision of the Uniform Primaries Act, supra, and the Pennsylvania Election Code of 1937, and that the latter does not contain the mandatory language to be found in the former. An interesting discussion could be had on this subject, but here again we prefer to rest our decision on constitutional grounds.

If we follow the Blankenburg case, as the Secretary of the Commonwealth has, and ignore the provisions of the Constitution, we are also ignoring several well-settled fundamental principles of law.

The first is that even though the provisions of a statute may be regarded as directory, the provisions of the Constitution are mandatory, and it is dangerous to construe the provisions of the Constitution as directory.

The second is that it is the general policy of the law to fill vacancies in elective offices at an election as soon as practicable after the vacancy occurs.

The third is that election laws should be liberally construed to effectuate the policy just referred to, in giving the electorate the right to fill the office, and the important thing is the act itself, namely, the nomination of the can-

didates by party so that the electorate may exercise its right, rather than the importance of the machinery through which that right may be afforded.

It has been settled, in construing the provisions of the Constitution referring to the election of judges, that section 25 of article V is to be strictly followed, and is still in force, unaffected by subsequent amendments to other constitutional provisions: Buckley v. Holmes et al., 259 Pa. 176. It is also settled that the municipal election under our present Constitution, to be held in the odd-numbered years, is a general election.

In Commonwealth v. City of South Bethlehem, 248 Pa. 581, it is held that a municipal election held pursuant to the amendments of the Constitution is a general election within the meaning of article XV, sec. 1, of the Constitution. It would be a very anomalous situation to hold that that part of the Constitution includes a municipal election and that another part should not include a municipal election; so we hold, and we think it must be admitted, that the language of section 25 of article V, referring to general elections, includes the municipal election under our present Constitution.

1. Returning now to the first proposition. There was a rather settled rule of construction prior to the Blankenburg case, as indicated by the large number of authorities cited in that case, that the construction of a statute may be directory and not mandatory as to the time and manner in which a duty imposed upon a public officer is to be exercised, in the absence of negative words, and in the later cases the Supreme Court of this State has adhered to that rule.

In Socialist Labor Case, 332 Pa. 78, decided October 13, 1938, the Supreme Court in an opinion by Chief Justice Kephart held that section 977 of the Pennsylvania Election Code, which provides that all nomination petitions and papers shall be valid unless a petition to set them aside be presented within five days after the last day for filing, is directory and not mandatory.

In Commonwealth ex rel. v. Wozney, 326 Pa. 494, 497, Chief Justice Kephart said, citing authorities for the proposition:

"The provisions of a statute requiring public officers to act within a specified time are generally regarded as directory, unless time is of the essence of the thing to be done, or the statute indicates that the provision is to be regarded as mandatory."

And in Tausig v. Lawrence, Secy. of Com., 328 Pa. 408, 412, the Chief Justice also said:

"The question of whether the advertising provisions [in the Constitution] are mandatory or directory has therefore never been squarely before this court and the solution must depend upon well-settled rules of constitutional construction rather than upon fragmentary dicta in prior decisions. See *Commonwealth ex rel. v. Lawrence,* 326 Pa. 526, 530. In construing a statute, substantial compliance with detailed requirements as to the time in which an act may be done is frequently held sufficient, as long as the purpose of the act is effectuated, but a different attitude toward construction must be taken when procedural requirements of the constitution are under consideration."

In Tausig v. Lawrence, Secy. of Com., supra, Chief Justice Kephart cited 1 Cooley's Constitutional Limitations (8th ed., 1927), 159. It is there said:

"But the courts tread upon very dangerous ground when they venture to apply the rules which distinguish directory and mandatory statutes to the provisions of a constitution. Constitutions do not usually undertake to prescribe mere rules of proceeding, except when such rules are looked upon as essential to the thing to be done . . . . If directions are given respecting the times or modes of proceeding in which a power should be exercised, there is at least a strong presumption that the people designed it should be exercised in that time and mode only; and we impute to the people a want of due appreciation of the purpose and proper province of such

an instrument, when we infer that such directions are given to any other end."

What then is the situation directly confronting us? Section 25 of article V of the Constitution provides:

"Any vacancy happening by death, resignation or otherwise, in any court of record, shall be filled by appointment by the Governor, to continue till the first Monday of January next succeeding the first general election, which shall occur three or more months after the happening of such vacancy."

This language is clear. The Governor has the right to appoint, "to continue till the first Monday of January next succeeding the first general election". Unless the people definitely intended that there should be an election the power to appoint would not have been so limited, and if there is not to be such an election the Governor would have to reappoint at the expiration of his first appointment. Certainly the Constitution never intended such a situation in view of the second proposition which we shall later discuss. The language itself carries the necessary implication that there shall be an election. How then can section 905 of article IX of the Pennsylvania Election Code interfere with that constitutional requirement? If the vacancy occurs three or more months prior to the election there is a constitutional mandate to fill that vacancy at that time. Section 905, art. IX, of the Pennsylvania Election Code, if mandatory, nullifies this constitutional right of the people because it so happens that the tenth Tuesday preceding the primary is more than three months prior to the election. This section of the Pennsylvania Election Code prohibits a party primary election unless the Secretary sends to the county board a notice designating that such election is to be held.

In Commonwealth v. Maxwell, 27 Pa. 444, it is held:

"A law *intended* to take away, or *unnecessarily postpone* and embarrass the right of election, would be set aside as unconstitutional. But a provision prescribing three months for deliberation in the choice of a successor,

in case of a vacancy, is a reasonable time, and based upon the analogies of the constitution."

And in that same case Judge Woodward, quoting from Justice Gibson, in Commonwealth v. Clark, 7 W. & S. 127, said (p. 133):

"A constitution is not to receive a technical construction, like a common-law instrument or a statute. It is to be interpreted so as to carry out the great principles of the government, not to defeat them".

The contention of the Secretary of the Commonwealth, in the language just quoted, does "unnecessarily postpone and embarrass the right of election", and puts the emphasis upon the provisions of the statute and not the Constitution.

2. The second well-recognized proposition is that it is the general policy of the law that vacancies in elective offices should be filled at an election as soon as practicable after the vacancy occurs, and that appointments to fill vacancies should be effective only until the people may elect: State ex rel. v. Board of Commissioners of Lyman County et al., 34 S. D. 256, 145 N. W. 548; State ex rel. v. Moore et al., 49 Ariz. 51, 64 P. (2d) 809. This principle is also announced in some of our Pennsylvania cases, and time does not permit for the search of them, but since our Constitution itself declares the principle cases are not necessary.

Article VIII, sec. 3, as amended November 4, 1913, provides, inter alia:

"All judges elected by the electors of the State at large may be elected at either a general or municipal election, as circumstances may require."

Where a vacancy occurs three months prior thereto in the appellate courts it is to be filled at the very first election.

Article IV, sec. 8, as amended November 2, 1909, provides, inter alia, for appointment by the Governor to elective offices, including the judicial office, "but in any such case of vacancy, in an elective office, a person shall be

chosen to said office on the *next election day appropriate to such office according to the provisions of this Constitution*". (Italics supplied.)

So that we have the constitutional mandate that vacancies should be filled by the people as soon as it can be properly done, and these provisions of the Constitution, together with section 25 of article V, which permits the Governor, in case of vacancy occurring three or more months before the election, to appoint only until the first Monday of January next succeeding the *first* general election, makes the duty clear, and to postpone the election from the first to the third election is violating the provisions of the Constitution.

3. It is well settled that election laws should be liberally construed so as to carry out the right of the people to fill elective offices: In re Appeal of Evans, 44 Dauph. 339; Fitzpatrick v. Lawrence, etc., 45 Dauph. 358.

The genius of our government is that it is a government by the people, and the constitutional and legislative policy to effectuate the right of the people to govern is through election of officers presented to the people by party nominations. Such nominations are encouraged as the means of having the largest number of electors express their choice at the election. The right, however, is given to unorganized individuals to vote for candidates who may not desire to express their preference for party candidates. The Election Code carries out this principle. If, however, the position taken by the Secretary of the Commonwealth is correct, and the statute as to the time of notifying county boards of elections is to be strictly carried out, then party nominations are denied, while the unorganized electorate may name a candidate and vote. That situation does violence to the principles of party elections, because in naming candidates under such circumstances the unorganized crowd, called in the act "political body", cannot use the name of an organized political party. Such a construction of the statute ought not to be made if it can be avoided.

Under the Uniform Primaries Act of 1906 there was machinery for a party through its officers to nominate after the time had gone by. There is no such provision in the Election Code. In the event that nominations are made to fill the vacancy in the instant case by political bodies the party voter cannot express his choice except by writing the name of his choice upon his ballot. This would be not only cumbersome and inconvenient but take away the facility of expressing the choice which the law intends to give. It may be that that situation influenced the construction placed upon the statute in the Blankenburg case.

To recapitulate: as we construe the situation, section 25 of article V contains the mandatory direction that this vacancy, having happened more than three months before the next general (municipal) election, must be filled at the election of November 7, 1939.

Chief Justice Kephart said, in Commonwealth ex rel. v. Wozney, 326 Pa. 494, 497:

"The prime purpose was to fill a vacancy within a reasonable time. The persons to act were not so important as the act itself."

Every step has been carried out in the instant case except the mere notice from the Secretary of the Commonwealth to the county board, and there is still a reasonable time to do all the things preliminary to the election which the law requires. To hold that the statute is mandatory, we not only violate all the principles to which we referred, but refuse to give effect to the Constitution itself, and therefore we hold, notwithstanding the facts and the decision of the Blankenburg case decided without reference to the Constitution, that, when considering the situation with reference to it, the language of section 905 of article IX is not mandatory but directory.

Now, July 27, 1939, for the reasons which we have heretofore given, a peremptory mandamus is hereby awarded directing the Secretary of the Commonwealth of Pennsylvania to receive the nomination petition of

Anthony Cavalcante as a candidate for the office of judge of the court of common pleas in the fourteenth judicial district for nomination at the primary election to be held September 12, 1939; the peremptory mandamus to issue unless waived by respondent.